UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICROSTRATEGY SERVICES CORPORATION,<br><br>*Plaintiff*,<br><br>v.<br><br>STATE STREET BANK AND TRUST COMPANY<br><br><u>SERVE</u>:<br>CT Corporation System<br>155 Federal Street, Suite 700<br>Boston, Massachusetts, 02110,<br><br>*Defendant*. | Case No. 1:21-cv-11826 |

## COMPLAINT

Plaintiff MicroStrategy Services Corporation ("MicroStrategy"), by counsel, brings this Complaint for breach of contract against State Street Bank and Trust Company ("State Street").

### Nature of the case

1. This action arises from State Street's breach of a Software License Agreement dated September 27, 2012 and associated purchase agreements and sales orders (collectively, the "Governing Agreements") between MicroStrategy and State Street.

2. State Street breached the Governing Agreements by, at least: (a) distributing and granting access to MicroStrategy reports and messages directly generated by MicroStrategy software products to recipients that are not licensed Named Users of MicroStrategy products, and (b) using MicroStrategy software products to distribute MicroStrategy reports and output directly generated by the products to external third party recipients for use outside the scope of State Street's internal business operations.

3. Although the true extent of State Street's breach is unknown, MicroStrategy currently calculates its damages as at least USD 6,166,519.

## Parties

4. MicroStrategy Services Corporation is a Delaware corporation with its principal place of business at 1850 Towers Crescent Plaza, Tysons Corner, Virginia 22182.

5. State Street Bank and Trust Company is a Massachusetts trust company and a citizen of Massachusetts, with its principal place of business in Boston, Massachusetts.

## Jurisdiction and Venue

6. This Court has jurisdiction under 28 U.S.C. § 1332 because MicroStrategy and State Street are citizens of different states and the amount in controversy exceeds $75,000.

7. Venue in this Court is proper under 28 U.S.C. § 1391(b)(1) because State Street resides in this judicial district.

## Factual Allegations

**I.    MicroStrategy's products**

8. Founded in 1989, MicroStrategy is a Tysons, Virginia-based provider of enterprise software. Its mission is to help organizations become Intelligent Enterprises by providing powerful software solutions and expert services that empower every individual with actionable intelligence, so they can unleash the full potential of their people and investments. MicroStrategy partners with over 4,000 customers from a range of industries, as well as the public sector.

9. MicroStrategy has invested tremendous resources into the development and maintenance of its software products. Unlike other vendors, all its technology has been built organically, so every piece of the MicroStrategy ecosystem fits together seamlessly.

**II.     State Street licenses MicroStrategy's products under the Governing Agreements**

10.     State Street licenses MicroStrategy's computer software products under a master Software License Agreement ("SLA") executed on September 27, 2012.

11.     After executing the SLA, State Street and MicroStrategy executed a series of purchase agreements and sales orders whereby State Street purchased a limited number of Named User Licenses for specific MicroStrategy software products, along with related standard Technical Support Services.

12.     Along with the SLA, the purchase agreements and sales orders set forth the terms and conditions of the specific licenses issued to State Street.

13.     The SLA defines a "Product" as "an unmodified, generally available computer software program listed on the MicroStrategy standard price list and identified on an Order accepted by MicroStrategy ('Software'); the Documentation; tools included with the Software; and any and all Updates to the Software delivered to Licensee."

14.     The SLA defines a "Product License" as "a license to use a Product according to the terms and conditions of a software licensing agreement with MicroStrategy."

15.     The SLA also defines the two types of Product Licenses that may be purchased from MicroStrategy:  Named User Licenses and CPU Licenses.  The type of Product License ordered by a customer will be listed on the applicable order under "SKU Type."

16.     The SLA defines a "Named User License" as "a license to use a Product under which only one (1) identified individual using a single login ("Named User") may access the Product *or reports or messages directly generated by the Product*." (Emphasis added).

17. Accordingly, the only individuals permitted to access the Product or to access reports or messages directly generated by the Product are those for whom Named User Licenses have been purchased.

18. In contrast, the SLA defines a "CPU License" as "a license to use a Product on a single CPU, in support of an unspecified number of Named Users in the DSI and environment stated on each Order."

19. The SLA further limits State Street's use or access to the products for the sole benefit of "Licensee's internal business operations." SLA § 1.1. In no instance does the SLA authorize State Street to use the Products to benefit another entity's business operations.

20. Under Section 1.3(a) of the SLA, State Street is prohibited from using the products in any manner or for any purpose not expressly authorized by the Agreement.

21. Under Section 3.3 of the SLA, MicroStrategy is permitted to terminate the SLA or any license upon written notice to State Street "if Licensee breaches a material provision of this Agreement and fails to cure the breach within thirty (30) Days following such notice."

22. Termination does not "prevent either party from pursuing all available legal remedies, nor shall such termination relieve Licensee's obligation to pay all fees that are owed."

### III.   State Street breaches the Governing Agreements

23. On July 15, 2021, MicroStrategy sent State Street a detailed Notice of Breach and provided State Street 30 days to cure in accordance with Section 3 of the SLA.

24. MicroStrategy's Notice of Breach identified at least two separate breaches: (a) distributing and granting access to MicroStrategy reports and messages directly generated by MicroStrategy software products to recipients that are not licensed Named Users of MicroStrategy products, and (b) using MicroStrategy software products to distribute MicroStrategy reports and

output directly generated by the products to external third party recipients for use outside the scope of State Street's internal business operations.

    **A.**    **Unauthorized distribution of reports to recipients that are not Named Users**

25.    State Street has ordered Named User Licenses from MicroStrategy for only a limited number of individuals, all subject to the terms of the Governing Agreements.

26.    Without the appropriate license, an individual may neither access the Products themselves nor access reports or messages directly generated by the Products.

27.    State Street has, in fact, distributed and granted access to MicroStrategy reports and messages directly generated by MicroStrategy software products to at least 400 recipients that are not licensed Named Users of MicroStrategy products, without MicroStrategy's authorization or license and without paying appropriate compensation to MicroStrategy.

28.    State Street's distribution of reports to recipients that are not Named Users violates Section 1.1 of the SLA.

    **B.**    **Unauthorized use by third parties**

29.    State Street has also, in fact, allowed third party recipients to use these materials as part of the third-party's business operations—not State Street's internal business operations.

30.    MicroStrategy has learned that State Street has been using MicroStrategy products to distribute reports or messages directly generated by the Products to at least 400 external third parties, if not more.

31.    State Street acknowledged this distribution during a June 25, 2021 call with MicroStrategy representatives.

32. State Street's distribution of reports generated by the Products to these third parties for their own use violates Section 1.1 of the SLA, which strictly limits access to the Licensed Products to licensed Named Users "in support solely of Licensee's internal business operations."

33. The evidence available to MicroStrategy and State Street's own representations indicate that reports and other output directly generated by the Products are distributed directly to those unlicensed recipients from the Products.

34. State Street has further acknowledged that such activity has been taking place for the nine years the SLA has been in place.

## IV. State Street refuses to cure

35. MicroStrategy's Notice of Breach set forth specific calculations of Products, license types, quantities, and corresponding prices to address State Street's unauthorized distribution of reports beyond Named Users, using an estimate of nine years of noncompliance and unpaid related technical support services fees.

36. MicroStrategy's Notice of Breach provided clear instructions to State Street to cure its breach.

37. On July 22, 2021, State Street's counsel responded to MicroStrategy's Notice of Breach.

38. State Street's counsel denied that it was in breach.

39. State Street's counsel's letter made clear that State Street would not cure.

40. State Street insisted that the SLA "does not prohibit State Street from distributing reports of State Street's and its customers' data, either internally or externally."

41. State Street is incorrect based on the clear and unambiguous terms of the SLA.

42. State Street did not cure—and refused to cure—its breach in accordance with Section 3 of the SLA, and MicroStrategy terminated the Governing Agreements.

43. MicroStrategy is now left with no choice but to protect its rights by filing suit to recover its damages.

## COUNT I
### (Breach of Contract)

44. MicroStrategy incorporates all factual allegations made above.

45. The Governing Agreements are valid, enforceable, and binding on State Street.

46. MicroStrategy granted State Street a limited license for only the express purposes authorized in the Governing Agreements.

47. As explained above and in MicroStrategy's communications, State Street breached the Governing Agreements by:

(a) distributing and granting access to MicroStrategy reports and messages directly generated by MicroStrategy software products to recipients that are not licensed Named Users of MicroStrategy products, and

(b) using MicroStrategy software products to distribute MicroStrategy reports and output directly generated by the products to external third-party recipients for use outside the scope of State Street's internal business operations.

48. The full extent of State Street's noncompliance is currently unknown to MicroStrategy.

49. Based on limited information obtained by MicroStrategy and provided by State Street, and using an estimate of 9 years of noncompliance, MicroStrategy believes and therefore avers that the total amount due and owing to MicroStrategy is at least USD 6,166,519.

50. MicroStrategy has complied with any and all conditions precedent to suit.

## Prayer for Relief

WHEREFORE, MicroStrategy prays:

A. For an order entering judgment that State Street has violated the terms of the Governing Agreements;

B. For an order awarding damages to MicroStrategy in the amount currently estimated to be at least USD 6,166,519, or such other amount as is revealed once State Street discloses the true extent of its noncompliance;

C. For an award of injunctive relief enjoining State Street and all others acting in concert with it from using any of MicroStrategy's computer software products in violation of the Governing Agreements;

D. For an award requiring State Street to provide an audit and a full accounting for all deployed Products during the term of the Governing Agreements; and

E. For such other, further, or different relief as this Court may deem just and appropriate.

## DEMAND FOR JURY

MicroStrategy hereby demands trial by jury.

| | |
|---|---|
| Dated: November 9, 2021 | Respectfully submitted,<br><br>VENABLE LLP<br><br>___/s/ Joseph D. Dell'Armi_____<br>Joseph Dell'Armi (Mass. BBO 680569)<br>Rockefeller Center<br>1270 Avenue of the Americas, 23rd Floor<br>New York, NY 10020<br>(212) 808-5674<br>(212) 307-5598 (facsimile)<br>jdellarmi@Venable.com<br><br>*Nicholas M. DePalma<br>*Kevin W. Weigand<br>*(*subject to admission pro hac vice*)<br>8010 Towers Crescent Drive, Suite 300<br>Tysons, VA 22182<br>Tel: (703) 905-1455<br>Fax: (703) 821-8949<br>nmdepalma@venable.com<br>kwweigand@venable.com<br><br>*Linda J. Zirkelbach<br>*(*subject to admission pro hac vice*)<br>600 Massachusetts Avenue, NW<br>Washington, D.C. 20001<br>Tel: (202) 344-4410<br>Fax: (202) 344-8300<br>LJZirkelbach@venable.com<br><br>*Counsel for MicroStrategy Services Corporation* |